UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BRIAN IPOCK, individually and as** | ) | |
| **Special Administrator of the Estate of** | ) | |
| **Janice Maybeth Ipock, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-0106-CVE-TLW |
| | ) | |
| **MANOR CARE OF TULSA OK, LLC,** | ) | |
| **d/b/a ManorCare Health Services-Tulsa,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Now before the Court are defendant's motion to dismiss (Dkt. # 10) and, in the alternative, defendant's motion to compel arbitration and stay these proceedings (Dkt. # 8). Defendant argues that plaintiff's suit should be dismissed for failure to attach an affidavit of merit to his petition as required by Okla. Stat. tit. 12, § 19.1. Dkt. # 8, at 9-10. Defendant also argues that plaintiff is bound by an arbitration agreement and that the arbitration agreement compels arbitration of plaintiff's claims. Dkt. # 8, at 7-8. Plaintiff responds that his suit should not be dismissed for failure to comply with § 19.1 for three alternate reasons: (1) plaintiff does not need to comply with § 19.1 because it is a state procedural requirement that conflicts with federal pleading requirements; (2) the investigative report he attached fulfills § 19.1; and (3) § 19.1 violates the Oklahoma Constitution. Dkt. # 12. Plaintiff also argues that, because he did not sign the arbitration agreement, he is not bound by it. Id. at 8-16.

I.

Janice Maybeth Ipock was a resident at ManorCare Health Services-Tulsa (ManorCare), a nursing home in Tulsa, Oklahoma, from December 2014 until her death on February 10, 2015. Dkt. # 8-1, at 1. In late December 2014, Mrs. Ipock's husband, Duncan Ipock, signed an arbitration agreement as Mrs. Ipock's legal representative in his representative capacity. Dkt. # 8-2. The arbitration agreement states that all claims arising out of or relating to Mrs. Ipock's time at ManorCare, including claims for malpractice, would be submitted to arbitration. Id. at 1. The arbitration agreement also states that the parties intend the agreement to "benefit and bind [ManorCare], its parent, affiliates, and subsidiary companies, and [to] benefit and bind [Mrs. Ipock], [her] successors, spouses, children, next of kin, guardians, administrators, and legal representatives." Id.

On February 9, 2017, plaintiff Brian Ipock, individually and as special administrator of Mrs. Ipock's estate, filed this suit against defendant Manor Care of Tulsa OK, L.L.C. Dkt. # 8-1. Plaintiff asserts that defendant acted recklessly and/or negligently in its care and treatment of Mrs. Ipock. Id. at 2. Plaintiff alleges two causes of action, negligence and wrongful death. Id. Plaintiff attached to his petition a 2015 investigative report written by the Oklahoma State Department of Health, which found that defendant "neglected to assess, monitor and intervene," "failed to provide therapeutic diets and accommodate residents' dietary needs," and "failed to ensure residents received medications and treatments as ordered by the physician." Dkt. # 2-3, at 6. Defendant now moves to dismiss, or in the alternative, to compel arbitration and stay these proceedings.

**II.**

The Court will first consider defendant's motion to dismiss. Defendant argues that this case should be dismissed due to plaintiff's failure to comply with Okla. Stat. tit. 12, § 19.1. Dkt. # 8, at 9-10. Section 19.1 provides that:

> In any civil action for negligence wherein the plaintiff shall be required to present the testimony of an expert witness to establish breach of the relevant standard of care and that such a breach of duty resulted in harm to the plaintiff, . . . the plaintiff shall attach to the petition an affidavit attesting that:
>
> a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,
>
> b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the determination of the expert that, based upon a review of the available material including, but not limited to, applicable records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the defendant against whom the action is brought constituted negligence, and
>
> c. on the basis of the review and consultation of the qualified expert, the plaintiff has concluded that the claim is meritorious and based on good cause.

Okla. Stat. tit. 12, § 19.1. Plaintiff argues that this suit should not be dismissed for failure to comply with § 19.1 for three reasons: (1) plaintiff does not need to comply with § 19.1 in a diversity case in federal court; (2) the investigative report he attached fulfills § 19.1; and (3) § 19.1 violates the Oklahoma Constitution. Dkt. # 12.

The Tenth Circuit has not decided whether § 19.1 applies in diversity cases, and district courts are split on the issue. Compare Sanders v. Glanz, 138 F. Supp. 3d 1248, 1261 (N.D. Okla. 2015) (compliance with § 19.1 not required in diversity cases), and Doe v. Defendant A, No. 12-CV-392-JHP-TLW, 2012 WL 6694070, at *8 (N.D. Okla. Dec. 21, 2012) (same), and Horsechief v. U.S. ex rel. Dep't of Health & Human Serv. ex rel. Indian Health Serv., No. 10-CV-614-JHP-TLW, 2012

3

WL 5995691, at *2 (N.D. Okla. Nov. 30, 2012) (same), and Spottedcorn v. Advanced Correctional Healthcare, Inc., No. CIV-11-1096-C, 2011 WL 6100653, at *1 (W.D. Okla. Dec. 7, 2011) (same), with Martin v. U.S. ex rel. Dep't of Health & Human Serv., 15-CV-487-CVE-TLW, 2016 WL 3566863, at *4 (N.D. Okla. June 24, 2016) (plaintiff must comply with § 19.1 in diversity cases), and Norman v. U.S. ex rel. Veteran's Admin. Med. Ctr., No. CIV-12-663-C, 2013 WL 425032, at *1-2 (W.D. Okla. 2013) (same), and Flud v. U.S. ex rel. Dep't of Veterans Affairs, No. 10-CV-725-GFK-TLW, 2011 WL 2551535, at *2 (N.D. Okla. June 27, 2011), rev'd on other grounds, 528 F. App'x 796 (10th Cir. 2013) (same). Moreover, this issue is not unique to Oklahoma; many states have statutes requiring affidavits of merit, and federal courts have been conflicted over their applicability in diversity suits for decades. See Jones v. Corr. Med. Serv., Inc., 845 F. Supp. 2d 824, 854 n.11 (W.D. Mich. 2012) (collecting cases); see also State Auto. Mut. Ins. Co. v. Dunhill Partners, Inc., No. 3:12-cv-03770-P, 2013 WL 11821466, at *5 (N.D. Tex. May 28, 2013) ("In the past three years alone, at least two district courts have analyzed whether section 150.002 applies in federal court and each reached a different conclusion. . . . Stated mildly, this is an area where there are reasonable grounds for differences in opinion.").

   The first step in determining whether § 19.1 applies in a diversity suit is to conclude whether § 19.1 is in "direct collision" with any federal procedural rule. Hanna v. Plumer, 380 U.S. 460, 472 (1965); see also Scottsdale Ins. Co. v. Tolliver, 636 F.3d 1273, 1276-77 (10th Cir. 2011). "The question is not whether the federal and state rules overlap. Rather, it is 'whether, when fairly construed, the scope of [the Federal Rule] is sufficiently broad' to cause a direct collision with the state law or, implicitly, to control the issue before the court, thereby leaving no room for operation of [the state] law.'" Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1539-40 (10th

Cir. 1996) (quoting Burlington N. R.R. Co. v. Woods, 480 U.S. 1, 4-5 (1987)) (alteration in original) (internal quotation marks omitted).

Section 19.1 directly collides with Rules 8 and 9 of the Federal Rules of Civil Procedure. Rule 8 states that a claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim," and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). Rule 9 sets out additional pleading requirements for certain types of claims. See Fed. R. Civ. P. 9. Rules 8 and 9 are "sufficiently broad" to control the pleading requirements for cases filed in federal court. Section 19.1 imposes an additional pleading requirement, an affidavit of merit, and therefore conflicts with the federal pleading sufficiency standards. See Garman v. Campbell Cnty. Sch. Dist. No. 1, 630 F.3d 977, 983 (10th Cir. 2010) ("[Rule 8(a)(1)] is broad enough to control the area addressed by Wyoming's pleading requirements."); see also Larca v. United States, 302 F.R.D. 148, 159 (N.D. Ohio 2014) (finding Ohio affidavit of merit requirement conflicts with Rules 8 and 9 by imposing a heightened pleading requirement); Estate of C.A. v. Grier, 752 F. Supp. 2d 763, 771 (S.D. Tex. 2010) (same for Texas affidavit of merit law).

The second step in determining whether § 19.1 applies in a diversity suit is to determine whether applying Rules 8 and 9 would violate the Rules Enabling Act, 28 U.S.C. § 2072.[1] When

---

[1] Some district courts have found that § 19.1 must be applied in diversity cases under Trierweiler. See Norman, 2013 WL 425032, at *1-2; Flud, 2011 WL 2551535, at *2. But the holding of Trierweiler is of limited guidance here because the second step question is different. Trierweiler concerned the applicability of a Colorado law that requires plaintiffs to file a certificate of review within 60 days of filing suit. Trierweiler, 90 F.3d at 1539. The Tenth Circuit determined that the law did not collide with any federal procedural rule, and therefore the statute should be analyzed under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). Trierweiler, 90 F.3d at 1539. Section 19.1 is different because it requires an affidavit
(continued...)

state law conflicts with federal procedural law in a diversity case, federal procedure governs unless it violates the Rules Enabling Act. Jones v. United Parcel Serv., Inc., 674 F.3d 1187, 1206 (10th Cir. 2012) (quoting Shady Grove Orthopedic. Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 397 (2010)). The Rules Enabling Act grants the Supreme Court the power to prescribe "general rules of practice and procedure" for use in the federal courts, but limits that power to such rules that do not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. The Supreme Court most recently addressed what constitutes a violation of the Rules Enabling Act in Shady Grove, which presented the issue of whether a New York statute that precluded a class action to recover certain penalties, such as statutory interest, applied in diversity cases. Justice Scalia, writing for the Court, determined that the statute inevitably collided with Rule 23. Shady Grove, 559 U.S. at 406. The Court held that there was no violation of the Rules Enabling Act, and therefore Rule 23 should be applied in diversity cases, not the state statute. See id. at 416. However, the Court splintered on the what test should be used to analyze the Rules Enabling Act question, with Justice Scalia's four-justice plurality endorsing a test focused on the nature of the federal procedural rule and Justice Stevens's concurring opinion applying a test focused on the nature of the state law. See James River

---

[1] (...continued)
of merit to be filed with the complaint, and therefore conflicts with the federal pleading requirements. Because there is a collision, the analysis shifts to the Rules Enabling Act, not Erie. See Shady Grove Orthopedic. Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 397 (2010) ("We do not wade into Erie's murky waters unless the federal rule is inapplicable or invalid."). In fact, some courts have noted that much of the split in authority on the applicability of state laws requiring affidavits of merit in diversity cases can be explained by distinguishing between state laws creating additional pleading requirements and laws requiring filings well after the pleadings have been filed. See, e.g., Estate of C.A., 752 F. Supp. 2d at 770-71; Long v. Adams, 411 F. Supp. 2d 701, 708 (E.D. Mich. 2006). Here, Trierweiler's conclusion that the Colorado certificate requirement applies in diversity cases is inapplicable because it was made under an analysis of Erie, not the Rules Enabling Act.

Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1217 (10th Cir. 2011) (discussing the "splintered" opinions of Shady Grove).

The Tenth Circuit has applied Shady Grove in four published opinions: Scottsdale and Jones, which apply Justice Scalia's test, and Garman and James River, which apply Justice Stevens's test. Jones is the most recent decision,[2] but the opinions that have explicitly discussed the fractured nature of Shady Grove have applied Justice Stevens's test. See Garman, 630 F.3d at 984; James River, 658 F.3d at 1217-18. Additionally, most district courts in the Tenth Circuit have applied Justice Stevens's test without reference to Scottsdale or Jones. See Friedman v. Dollar Thrifty Auto. Grp., Inc., No. 12-cv-02432-WYD-KMT, 2015 WL 8479746, at *3-4 (D. Colo. Dec. 10, 2015); Diamond Ranch Acad., Inc. v. Filer, 117 F. Supp. 3d 1313, 1319 (D. Utah 2015); Upky v. Lindsey, No. CIV-13-0553-JB/GBW, 2015 WL 1918229, at *20-21 (D.N.M. Apr. 7, 2015); Pfeifer v. Fed. Exp. Corp., No. 09-cv-1248-EFM-KMH, 2014 WL 4294957, at *5 (D. Kan. Aug. 29, 2014). But see Racher v. Westlake Nursing Home Ltd. P'ship, No. CIV-13-364-M, 2014 Wl 2003041, at *2 (W.D. Okla. May 14, 2014) (quoting the Shady Grove plurality opinion). Given the Tenth Circuit's explicit adoption of Justice Stevens's concurrence in Garman and James River, it appears that is the Shady Grove test binding on this Court. However, because which test is applied would not change the outcome of this case, and the most recently published Tenth Circuit opinion on the issue uses Justice Scalia's test, the Court will analyze whether applying federal procedural law would violate the Rules Enabling Act under both Shady Grove tests.

---

[2] There is a later unpublished opinion, Kechi Tp. v. Freightliner, LLC, 592 F. App'x 657, 673 (10th Cir. 2014), which applies Justice Stevens's test.

Under Justice Stevens's Shady Grove concurring opinion, applying a federal procedural rule when there is a conflicting state law in a diversity case violates the Rules Enabling Act when "the state law actually is a part of a State's framework of substantive rights or remedies." Garman, 630 F.3d at 984 (quoting Shady Grove, 559 U.S. at 419 (Stevens, J., concurring)). For Justice Stevens, the key is the functional nature of the state law, not whether it appears procedural or substantive on the surface. Shady Grove, 559 U.S. at 423 (Stevens, J., concurring) ("A federal rule, therefore, cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right."). However, "the bar for finding an Enabling Act problem is a high one," and "[t]he mere fact that a state law is designed as a procedural rule suggests it reflects a judgment about how state courts ought to operate and not a judgment about the scope of the state-created rights and remedies." Id. at 432.

Here, § 19.1 is not a part of Oklahoma's "framework of substantive rights or remedies." Section 19.1 does not alter the scope of a negligence claim, nor does it change the remedies available to a plaintiff with a negligence claim. The law requires that plaintiff consult with a qualified expert only in cases where the testimony of an expert witness would be required to establish a "breach of the relevant standard of care." Okla. Stat. tit. 12, § 19.1. The legal standards are unchanged, and the burden of providing expert testimony is unchanged; the effect of § 19.1 is to require certain plaintiffs to present a more detailed set of allegations supported by expert testimony earlier in a case than they would have absent § 19.1. Given that § 19.1 does not alter the rights and remedies of the parties, application of Rules 8 and 9 over § 19.1 would not meet the high bar required to find an Enabling Act problem. See Larca, 302 F.R.D. at 159-60 (finding that Rules 8 and 9 displace Ohio affidavit

of merit requirement under Justice Stevens's Shady Grove test); Estate of C.A., 752 F. Supp. 2d at 771 (same for Texas affidavit of merit law). Thus, § 19.1 would not apply in diversity cases under the framework set out by Justice Stevens in his Shady Grove concurrence.

Under Justice Scalia's Shady Grove plurality opinion, to determine whether a rule of federal procedure violates the Rules Enabling Act, courts determine whether the federal rule governs procedure. Shady Grove, 559 U.S. at 410 (plurality opinion) ("[I]t is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule."); see also Jones, 674 F.3d at 1206 ("We do not look to the purpose of the conflicting state law, but rather we look to [the federal rule] itself."). "The test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." Jones, 674 F.3d at 1206 (quoting Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941)); see also Shady Grove, 559 U.S. at 407 (plurality opinion). Here, Rules 8 and 9 govern procedure. They set out the requirements for how parties must present their claims and defenses, not what law will apply to those claims and defenses. Because Rules 8 and 9 "regulate[] only the procedure used to enforce a state-created right, . . . [they are] procedural rule[s], authorized by the Rules Enabling Act." Jones, 674 F.3d at 1206.

Section 19.1 conflicts with Rules 8 and 9, and, because under both the plurality and concurring opinions in Shady Grove there would be no violation of the Rules Enabling Act, Rules 8 and 9 displace § 19.1 in diversity cases. Therefore, plaintiff was not required to attach an affidavit of merit to his complaint in this Court, and defendant's motion to dismiss is denied. Because the Court finds plaintiff was not required to comply with § 19.1, it need not address plaintiff's

9

arguments regarding his compliance with § 19.1 or the law's validity under the Oklahoma Constitution.

### III.

The Court next considers defendant's motion to compel arbitration and stay these proceedings. Defendant argues that the arbitration agreement signed by Mrs. Ipock's husband as her legal representative and in his representative capacity requires plaintiff's claims to be resolved through arbitration. Dkt. # 8, at 7-8. Plaintiff asserts that the arbitration agreement does not compel arbitration because he did not sign the agreement. Dkt. # 12, at 7.

The parties agree that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (FAA), applies to the arbitration agreement. Dkt. # 8, at 5; Dkt. # 12, at 6. The FAA reflects a "liberal federal policy favoring arbitration," and requires courts to "place arbitration agreements on an equal footing with other contracts." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, at 24 (1983); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986). Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA does not "purport[] to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009). Thus, to determine whether plaintiff's claims fall under the arbitration agreement, the Court looks to state law. See Belnap v. Iasis Healthcare, 844 F.3d 1272, 1293 (10th Cir. 2017) (citing Arthur Andersen, 556 U.S, at 630-31) ("To

determine whether these Defendants can compel Dr. Belnap to arbitrate based on the arbitration provision of the Agreement—an agreement that they never signed—we look to Utah law.").

**A.**

Plaintiff argues that defendant cannot compel him to arbitrate his wrongful death claim because he did not sign the arbitration agreement. Dkt. # 12, at 8-16. The Oklahoma Supreme Court directly addressed this issue in Boler v. Security Health Care, LLC, 336 F.3d 468 (Okla. 2014). As in this case, Boler involved an arbitration agreement signed on behalf of the decedent, and a wrongful death claim brought by the decedent's next of kin who had not signed the agreement in their personal capacities. Id. at 469. The Oklahoma Supreme Court held that the defendant could not compel arbitration because a wrongful death claim brought under Okla. Stat. tit. 12, § 1053 is not a wholly derivative claim. Id. at 477. Under Oklahoma law, a wrongful death claim "accrues separately to the wrongful death beneficiaries and is intended to compensate them for their own losses." Id. Because a wrongful death claim is brought on behalf of a decedent's next of kin for their own losses with recovery paid directly to the next of kin and not the estate of the deceased, "a decedent cannot bind the beneficiaries to arbitrate their wrongful death claim." Id. Thus, under Oklahoma law, defendant cannot compel plaintiff to arbitrate his wrongful death claim based on an arbitration agreement he did not sign.

Defendant argues that the FAA preempts Boler. Dkt. # 14, at 1. To determine whether a state law is preempted by the FAA, courts apply the two-part test set out by the Supreme Court in Concepcion. First, a state law is preempted if it "prohibits outright the arbitration of a particular type of claim." Concepcion, 563 U.S. at 341. Second, a state law "normally thought to be generally applicable" is preempted if it "would have a disproportionate impact on arbitration agreements." Id.

Defendant argues that Boler is preempted by the second prong of Concepcion because "it disfavors arbitration agreements, unfairly singles out arbitration agreements for differential treatment, and has a disparate impact on arbitration agreements." Dkt. # 14, at 2.

Defendant's argument is premised on a flawed understanding of Boler's holding. Defendant describes Boler as carving out an exception to the rule that wrongful death claims are derivative when an arbitration agreement is at issue. Dkt. # 14, at 4. The issue in Boler arose from an arbitration agreement dispute, but the holding of Boler has nothing to do with arbitration. Boler resulted in an arbitration agreement being unenforceable against the plaintiff, but the key holding is that a wrongful death claim is not wholly derivative. There is no language in Boler that can fairly be read to support limiting its holding to arbitration agreements, and defendant has presented no evidence that, since Boler, Oklahoma courts have treated wrongful death claims as completely derivative when there is no arbitration issue. Cf. Richmond Health Facilities v. Nichols, 811 F.3d 192, 198-199 (6th Cir. 2016) ("Critically, Plaintiffs have not cited any case showing a Kentucky court's enforcement of a contract against a wrongful-death beneficiary without the beneficiary being a party to it."). There is no differential treatment of arbitration agreements because Boler would compel the same outcome whether the agreement purporting to bind a decedent's next of kin was a contract or an arbitration agreement. Moreover, defendant has given the Court no reason to find that Boler disfavors arbitration agreements because "wrongful-death beneficiaries that exist at the time of a decedent's death are still free to arbitrate their claims." Id. at 200.

Concepcion preempts state laws that stand as a obstacle to the accomplishment of the full purposes of the FAA. See Concepcion, 563 U.S. at 352 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). The purpose of the FAA is to put arbitration agreements on equal footing with contracts.

See id. at 339. Boler interprets the nature of a wrongful death claim under Oklahoma law and treats arbitration agreements no differently than contracts. Thus, under Concepcion, the FAA does not preempt Boler, and defendant may not compel plaintiff to arbitrate his wrongful death claim.

**B.**

Plaintiff's response exclusively concerns his wrongful death claim and does not mention his negligence claim. Unlike his wrongful death claim, plaintiff's negligence claim is derivative and therefore covered by the arbitration agreement. See Dkt. # 2-3, at 2 (plaintiff's petition asserting negligence claim based on Mrs. Ipock's "pain, injury, and medical expenses caused by [defendant's] reckless and/or negligence care and treatment."). However, plaintiff argues in the alternative that the arbitration agreement is invalid because Duncan Ipock did not have the authority to sign for his wife. Dkt. # 12, at 25-26.

The party seeking to compel arbitration "must come forward with 'evidence sufficient to demonstrate an enforceable arbitration agreement.'" Vernon v. Qwest Comm'ns Int'l, Inc., 857 F. Supp. 2d 1135, 1148 (D. Colo. 2012) (quoting SmartText Corp. v. Interland, Inc., 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003)). Defendant has met its burden by presenting the arbitration agreement signed by Duncan Ipock (Dkt. # 8-2). "The burden thus shifts to [plaintiff] 'to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56.'" Id.; see also Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 159 (3d Cir. 2009) ("We apply the same standard as the District Court, compelling arbitration only where there is 'no genuine issue of fact concerning the formation of the agreement' to arbitrate."); Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel

arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment.").

In his response, plaintiff makes a "reluctant" challenge of the validity of the arbitration agreement, stating: "Brian Ipock—the Personal Representative and son of the decedent—states that his dad has never been his mother's attorney-in-fact, and his dad has never been a court appointed fiduciary for her." Dkt. # 12, at 26. Factual assertions appearing on in a brief are not a part of the record, LCvR 7.2(j), and plaintiff has presented no other evidence that undermines the validity of the arbitration agreement.  Thus, plaintiff has not raised a genuine issue of material fact, and the Court must compel arbitration of plaintiff's negligence claim.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Dkt. # 10) is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion to compel arbitration and stay these proceedings (Dkt. # 8) is **granted in part and denied in part**: it is granted as to plaintiff's negligence claim and denied as to plaintiff's wrongful death claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Court to Give Notice to the Oklahoma Attorney General of Plaintiff's Constitutional Challenge of 12 O.S. (2013) § 19.1 (Dkt. # 13) is **moot**.

**IT IS FURTHER ORDERED** that this suit is **stayed** pending the completion of the arbitration of the negligence claim. The parties shall file a joint statement advising the Court of the arbitrator's decision within 15 days of the completion of the arbitration proceedings.

**DATED** this 4th day of April, 2017.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE